1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   BRUCE RISEMAN,                          No. 2:14-cv-02656-MCE-CKD

12                 Plaintiff,

13        v.

14   UNITED STATES OF AMERICA, et al.,       **MEMORANDUM AND ORDER**

15                 Defendants.

16

17

18        Through this action, Plaintiff Bruce Riseman alleges he was subjected to medical

19   malpractice as a result of care he received from the Department of Veteran Affairs

20   ("VA"), an executive department of the United States government.  According to Plaintiff,

21   VA healthcare providers failed to properly diagnose, treat and prevent a heart attack he

22   suffered on March 28, 2010.  As a result the medical negligence he alleges, Plaintiff

23   seeks damages including physical pain and suffering, emotional distress and lost

24   earning capacity.

25        The United States now moves for summary judgment on grounds that because

26   Plaintiff failed to disclose his potential malpractice claim against the government as an

27   asset in bankruptcy proceedings, he is now barred by the doctrine of judicial estoppel

28   ///

1   from pursuing it through the present case.  For the reasons set forth below, the

2   government's motion is DENIED.[1]

3

4                                          **BACKGROUND**

5

6

7        The facts of this matter are essentially uncontroverted.  Plaintiff Bruce Riseman

8   filed for Chapter 13 bankruptcy protection on August 25, 2008.  A bankruptcy plan was

    confirmed on November 21, 2008.  Ultimately, on or about January 6, 2014, Plaintiff
9
    obtained a final discharge in bankruptcy for some $584,655.87 in accumulated debt in
10
    exchange for payments totaling some $13,926.72.  Plaintiff's creditors therefore obtained
11
    only about 3 percent of the amount they were owed at the conclusion of his bankruptcy
12
    proceedings
13
         In the meantime, and while the bankruptcy proceedings were pending, Plaintiff
14
    suffered the above-described heart attack in 2010.  On approximately November 29,
15
    2011, Plaintiff submitted an administrative tort claim to the VA, seeking $1.5 million for
16
    alleged negligence and medical malpractice on grounds that proper care and diagnosis
17
    could have prevented  his heart attack from occurring.  In September of 2012, the VA
18
    made a settlement offer to Plaintiff and negotiations to resolve the claim ensued.
19
    Plaintiff ultimately declined a final settlement offer from the VA in October of 2012.
20
    Plaintiff subsequently filed an appeal for reconsideration on or about April 12, 2013, and
21
    received his discharge in bankruptcy on January 6, 2014, during the pendency of that
22
    appeal.[2]  About fourteen months after Plaintiff's appeal was filed, the VA denied it on
23

24
         [1] Having determined that oral argument would not be of material assistance, the Court ordered this
25   matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

26       [2] The Court notes that both sides have filed Requests for Judicial Notice under Federal Rule of
    Evidence 201. Those Requests ask the Court to judicially notice various portions of the bankruptcy court's
27   docket in Plaintiff's Chapter 13 bankruptcy proceedings.  Both Requests are unopposed and are
    accordingly granted.
28
                                                2

1    grounds that Plaintiff's "failure to disclose his tort claim during the bankruptcy" precluded

2    him from pursuing it through any claim against the VA.  See June 26, 2014 Letter of

3    Denial  ECF No. 18-3.  The June 26, 2014 letter unequivocally informed Plaintiff that

4    since "this denial is the last action we will take on this tort claim," he would need to file

5    suit in federal court within six months if he wished to pursue the matter further.  Id.

6    Plaintiff subsequently filed the instant lawsuit on November 17, 2014.

7          On March 19, 2015, Plaintiff's counsel, William Deitchman, claims that the

8    Assistant United States Attorney handling the case, Gregory Broderick, informed him

9    that he believed judicial estoppel precluded the case.  Deitchman Decl., ECF N. 12-4,

10   ¶ 5.  That caused Mr. Deitchman to advise Plaintiff to reopen his bankruptcy and amend

11   his schedules to list the tort claim against the VA as an asset.  Id. at ¶ 6.  On July 27,

12   2015, he claims that he was advised that Plaintiff had in fact filed an application to

13   reopen his bankruptcy case on July 24, 2015.[3]  Id.

14         The only area of dispute in this matter rests with why Plaintiff did not schedule his

15   lawsuit against the VA as a potential asset in his bankruptcy proceedings sooner.

16   Plaintiff claims he told the VA about his bankruptcy and made no attempt to conceal his

17   bankruptcy from the VA during the course of settlement negotiations since he openly

18   brought up the issue at least twice.  Riseman Decl., ECF No. 12-3, ¶¶ 6, 15.

19   Additionally, Plaintiff claims that on or about October 18, 2012, he called and left a

20   message with his bankruptcy counsel's office about his settlement discussions with the

21   VA and was subsequently told that no changes needed to be made to his schedules.  Id.

22   at ¶ 7.  Plaintiff claims that he thought he had met his obligations by reporting his tort

23   claim to his bankruptcy attorney.  According to Plaintiff, his own belief that he didn't

24   need to amend his schedules in the absence of a settlement or confirmed case value

25   was validated by counsel's advice that no amendment was necessary.  Id. at ¶ 15.

26         [3] While the government contends that Plaintiff took steps to reopen his bankruptcy case only after
27   the present Motion was filed on July 23, 2015, Mr. Deitchman claims that because he was on vacation, he
     did not discover that the Motion had actually been filed until August 25, 2015, well after he had told his
28   client to reopen his bankruptcy proceedings. Id. at ¶ 7.

                                                    3

1    The government claims that despite Plaintiff's alleged inadvertence in this regard,

2    he remains precluded from asserting any claim through the present lawsuit because

3    doing so would be "clearly inconsistent" with failure to list the action as a bankruptcy

4    asset prior to his 2014 discharge.  Plaintiff, on the other hand, maintains that he made a

5    good faith mistake in failing to disclose the claim and had "no intention of concealing

6    [his] tort claim from the bankruptcy court, the bankruptcy trustee, [his] creditors, or

7    anyone else."  Id.  Plaintiff maintains that he amended his schedules to list this claim as

8    an asset once he learned he was supposed to have done so.  Id.

9

10                                                   **STANDARD**

11

12    The Federal Rules of Civil Procedure provide for summary judgment when "the

13    movant shows that there is no genuine dispute as to any material fact and the movant is

14    entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

15    Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

16    dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

17    In a summary judgment motion, the moving party always bears the initial

18    responsibility of informing the court of the basis for the motion and identifying the

19    portions in the record "which it believes demonstrate the absence of a genuine issue of

20    material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

21    responsibility, the burden then shifts to the opposing party to establish that a genuine

22    issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

23    Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

24    253, 288-89 (1968).

25    In attempting to establish the existence or non-existence of a genuine factual

26    dispute, the party must support its assertion by "citing to particular parts of materials in

27    the record, including depositions, documents, electronically stored information,

28    affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

4

1    not establish the absence or presence of a genuine dispute, or that an adverse party

2    cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

3    opposing party must demonstrate that the fact in contention is material, i.e., a fact that

4    might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

5    Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

6    Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

7    demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

8    such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,

9    477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

10   before the evidence is left to the jury of "not whether there is literally no evidence, but

11   whether there is any upon which a jury could properly proceed to find a verdict for the

12   party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251

13   (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).

14   As the Supreme Court explained, "[w]hen the moving party has carried its burden under

15   Rule [56(a)], its opponent must do more than simply show that there is some

16   metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  Therefore,

17   "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

18   nonmoving party, there is no 'genuine issue for trial.'"  Id. 87.

19        In resolving a summary judgment motion, the evidence of the opposing party is to

20   be believed, and all reasonable inferences that may be drawn from the facts placed

21   before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

22   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

23   obligation to produce a factual predicate from which the inference may be drawn.

24   Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

25   810 F.2d 898 (9th Cir. 1987).

26   ///

27   ///

28   ///

1

**ANALYSIS**

2

3        The government's request for summary judgment rests on the contention that

4    because Plaintiff failed to disclose his injury claim prior to receiving his bankruptcy

5    discharge, he should now be judicially estopped from moving forward with that claim

6    now.  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an

7    advantage by asserting one position, and then later seeking an advantage by taking a

8    clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778,

9    782 (9th Cir. 2001).  The doctrine is designed not only to prevent such unfair advantage,

10   but also "to protect against a litigant playing fast and loose with the courts" so as to

11   interfere with "the orderly administration of justice and . . .  the dignity of judicial

12   proceedings."  Id., citing Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).  Whether

13   to invoke judicial estoppel is a decision relegated to the court's sound discretion.

14   New Hampshire v. Maine, 532 U.S. 742, 750 (2001).

15        In its New Hampshire decision, the Supreme Court identified several factors that

16   typically inform the decision to apply equitable estoppel in a particular case.  Id.   First, a

17   party's later position must be "clearly inconsistent "with its earlier position.  Second, the

18   court must determine whether judicial acceptance of the litigant's position in a later

19   proceeding would create the perception that either the first or second court was misled.

20   Third, a court should assess whether, if not estopped, the party seeking to assert an

21   inconsistent position would derive an unfair advantage or impose an unfair detriment on

22   the opposing party.  Id.  In enumerating these factors, however, the Supreme Court was

23   careful to make it clear that they represented neither "inflexible prerequisites" nor an

24   "exhaustive formula" since additional considerations may come into play in assessing

25   the propriety of estoppel in specific factual contexts.  Id.  Significantly, for purposes of

26   the present case, the New Hampshire decision recognized that "it may be appropriate to

27   resist application of judicial estoppel when a party's prior position was based on

28   inadvertence or mistake.  Id. at 753.

1       In Ah Quin v. County of Kauai, 733 F.3d 267 (9th Cir. 2013), the Ninth Circuit

2    considered the application of judicial estoppel under circumstances similar to those

3    present here.  In Ah Quin, the plaintiff filed for bankruptcy protection and, like Plaintiff

4    here, initially failed to list a pending lawsuit for money damages as an asset on her

5    bankruptcy schedules.  Also, like the present matter, the Ah Quin plaintiff claims she

6    misunderstood her obligations in that regard, and it was not until after plaintiff was

7    discharged that she moved to reopen her bankruptcy case accordingly.  As Mr. Riseman

8    did here, the plaintiff then amended her bankruptcy schedules to include her pending

9    lawsuit as an asset.  The district court nonetheless granted the County of Kauai's motion

10   for summary judgment on grounds that Plaintiff's failure to initially disclose the claim

11   prohibited her from proceeding with her lawsuit.  On appeal, the Ninth Circuit reversed,

12   noting of "particular relevance" the Supreme Court holding in New Hampshire that

13   inadvertence or mistake may mitigate against the application of judicial estoppel.  Id. at

14   271.  The Ah Quin court recognized that several of its sister circuits had subsequently

15   adopted a narrow interpretation as to what constitutes an inadvertent or mistaken

16   omission in this regard, focusing only on whether the debtor knew about the pending

17   claim when filing bankruptcy schedules, and whether the debtor had a potential motive

18   to conceal the claim.  That Ninth Circuit recognized that limited construction, however,

19   holding that the relevant inquiry should more broadly focus on "the plaintiff's subjective

20   intent when filling out and signing the bankruptcy schedules."  Id. at 276-77.  Applying

21   this standard to the case before it, the Ninth Circuit found that arguably the evidence

22   could support either deceit or subjective mistake or inadvertence on the debtor's part.

23   Id. at 277.  With respect to the debtor's mistake, in Ah Quin, as here, the debtor filed a

24   declaration stating that she did not believe she had to disclose the pending lawsuit.

25   Plaintiff in the instant matter actually goes further in stating that not only did he not think

26   disclosure was necessary because the claim had no confirmed value, but he disclosed

27   the lawsuit to his bankruptcy counsel who, in turn, advised him that no amendment to his

28   schedules was necessary to reflect the claim.  Riseman Decl., ¶ 7, 15.  On the other

7

hand, like Plaintiff here, the fact that the plaintiff in Ah Quin failed to move to reopen the bankruptcy case until after the issue or judicial estoppel was raised arguably pointed to deception.   Id. at 278.   Nonetheless, despite the potentially conflicting evidence, the Ah Quin court found that "viewing the evidence in the light most favorable to Plaintiff, and thus crediting her affidavit, her bankruptcy filing was inadvertent."   Id. (internal citations omitted).   The Ninth Circuit vacated the district court's grant of summary judgment on that basis.[4]

Ah Quin is squarely on point.[5]   In both instances, a contingent lawsuit was omitted from bankruptcy asset schedules before a discharge in bankruptcy was granted, and in both cases the plaintiffs moved to reopen their bankruptcy schedules and filed new asset schedules once the error was brought to their attention.   Even more significantly, the debtors in both cases provided declarations which attested to their mistaken subjective belief that initial disclosure was not required.   In this case, like Ah Quin, the Court credits Plaintiff's declaration, views it in the light most favorable to him, and accordingly finds that the inadvertence and mistake necessary to avoid application of judicial estoppel has been established.   Had Plaintiff here wanted to deliberately hide his malpractice claim so as to justify being now estopped from proceeding, he would not have disclosed the existence of his bankruptcy proceedings to the VA during settlement negotiations, as he states he did on several occasions.[6]   Riseman Decl., ¶ 6.

---

[4] In addition to accepting that plaintiff's omission to initially list her discrimination lawsuit was inadvertent and justified relief from judicial estoppel on that basis, the Ah Quin court further noted that given the plaintiff's mistake, "the application of judicial estoppel would do nothing to protect the integrity of the courts…" Id at 276.   That conclusion, which as stated above is relevant to the very rationale underlying judicial estoppel, is equally applicable here.

[5] While the government relies heavily on an earlier Ninth Circuit case, Hamilton v. State Farm Fire & Cas. Co., supra, as the Circuit pointed out in its later Ah Quin decision, "[i]n Hamilton, it was palpable from the record that the plaintiff-debtor's bankruptcy omission was intentional in every sense of the term." Ah Quin, 733 F.3d 267, 273, n.5.   In Hamilton, unlike the present case, the plaintiff did not even "argue that his failure to disclose was based on inadvertence or mistake," and consequently the Hamilton opinion "did not mention, define, or consider the relevance of inadvertence or mistake." Id.   That distinguishes Hamilton from both Ah Quin and the present matter.

[6] In this sense it bears pointing out that Plaintiff's positions have not even necessarily been "completely inconsistent" which, as indicated above, is a prerequisite for application of judicial estoppel.

1    While the government infers that Plaintiff actually waited until this motion was filed

2    before taking steps to reopen her bankruptcy, Plaintiff's counsel states in his declaration

3    that he told Plaintiff to reopen his bankruptcy case and amend his schedules on May 28,

4    2015, well before this Motion was filed on July 23, 2015, and states that neither he (nor

5    presumably his client) knew that the Motion had been filed until August 25, 2015, well

6    after the case was reopened on July 24, 2015.  Deitchman Decl., ¶¶ 6-7.  The Court

7    construes these competing assertions in the light most favorable to Plaintiff, as it must in

8    adjudicating this Motion for Summary Judgment.

9    The Court is also unpersuaded by the government's claim that Plaintiff should, in

10   addition to moving to reopen his bankruptcy and filing an amended schedule of assets,

11   have also moved for the reappointment of a bankruptcy trustee.  First, the actions

12   Plaintiff did take comported with what the Ninth Circuit deemed sufficient in Ah Quin.

13   Additionally, while the government complains that Plaintiff's reopened bankruptcy case

14   was soon administratively closed given the fact that no re-appointment of the trustee

15   was requested, there is nothing that prevents the case from being reopened again.  As

16   the Ninth Circuit recognized in Ah Quin, a bankruptcy case "may be reopened even if it

17   has long been closed."   733 F.3d at 275, citing 11 U.S.C. § 350(b); Fed. R. Bankr. P.

18   5010.  Moreover, according to a Senior Staff Attorney for the Chapter 13 Trustee,

19   Plaintiff's case has already been referred to the Trustee for evaluation of "whether any

20   action is appropriate," including revoking Plaintiff's discharge and therefore reopening

21   the case yet again.  Decl. of Kristen A. Koo., ECF No. 18-2, ¶ 9.

22   As a final matter, it bears pointing out, as the Ninth Circuit did in Ah Quin, that

23   granting the Motion could in effect operate to the detriment of innocent creditors whose

24   ability to stake a claim on the outcome of Plaintiff's malpractice claim would thereby be

25   foreclosed if Plaintiff is estopped from continuing to litigate that claim.  To the extent that

26   the VA indeed bears liability for Plaintiff's treatment, it would be inequitable for it to reap

27
28   Plaintiff informed the VA, an executive agency of the United States government, that he had a pending
     bankruptcy claim even if he did not initially inform the United States Bankruptcy Court of that proceeding.

a windfall, and for creditors to potentially not benefit, from damages that would otherwise have been owed.  See id. at 275-76.  The Court accordingly concludes that the government's Motion for Summary Judgment fails.

## CONCLUSION

For the reasons stated above, the United States' Motion for Summary Judgment (ECF No. 10) is DENIED.

IT IS SO ORDERED.

Dated:  March 21, 2016

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT